IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAMILIES AND SCHOOLS TOGETHER FEDERAL CREDIT UNION,<br><br>Plaintiff,<br><br>vs.<br><br>AUTO MAXX, INC., EISSA ABOUMAALI, JOE QUINTANA, SAM SALIDA, ABLE MORALES,<br><br>Defendants. | CASE NO. CV F 07-0659 LJO SMS<br><br>**ORDER ON MOTIONS TO ENFORCE SETTLEMENT AGREEMENT** |

The parties filed cross motions to enforce the settlement agreement. Plaintiff Families and Schools Together Federal Credit Union ("FAST") moves to enforce the settlement. Defendants Auto Maxx, Inc. and Eissa Aboumaali also move to enforce the settlement. FAST seeks to enter judgment for the balance of the amount due and owing under the settlement agreement of $425,000. Defendants seek to enforce the settlement agreement by requiring FAST to return the payments made totaling $150,000. Pursuant to Local Rule 230(g), this matter is submitted on the pleadings without oral argument. Therefore, the hearing set for January 12, 2010 is VACATED. Having considered the moving, opposition, and reply papers, as well as the Court's file, the Court issues the following order.

**FACTUAL BACKGROUND**

**A.     Overview of the Case**

Plaintiff FAST is a federally chartered credit unions which engages in banking and lending activities, including financing automobile purchases for its members. From January 2002 through December 2002, FAST financed automobile loans to FAST members for automobiles purchased from Defendant Auto Maxx, Inc. Defendant Auto Maxx, Inc. is licensed by the state of California as a dealer of new and used vehicles. Defendant Eissa Aboumaali is the sole shareholder and chief executive officer

of Auto Maxx. During January to December 2002, FAST made approximately 250 automobile loans for vehicles sold by Auto Maxx, 50 of which are at issue in this litigation. Plaintiff repossessed the vehicles used as collateral on the defaulted loans, liquidated the cars and was left with outstanding deficiencies. Plaintiff contends that Auto Maxx made intentional and/or negligent misrepresentations as to the following information: (1) the value of the cars used as collateral, (2) the credit history and score of the borrowers, and (3) the personal and financial information of the borrowers as contained on their credit applications.

This action was removed from Fresno County Superior Court on May 1, 2007. FAST alleges the following claims for relief as to the various loans made:

1. Intentional Misrepresentation
2. Negligent Misrepresentation
3. Money Had and Received.

**B.  Overview of the Settlement Agreement**

On September 12, 2008, the parties entered into a written Settlement Agreement. Under the terms of the Agreement, Auto Maxx/Aboumaali agreed to pay a total of $525,000 to FAST in two separate installments. Auto Maxx/Aboumaali would pay $100,000 within fourteen (14) days of the execution of the settlement agreement and the remaining $425,000 within another 75 days or no later than December 22, 2008. To secure the payment, Mr. Aboumaali would give a deed of trust in the amount of $425,000 on ten acres of real property he owned in Fresno County within 14 days fo the execution of the Settlement Agreement, which was November 20, 2008. Mr. Aboumaali delivered a deed of trust as required under the agreement. On November 20, 2008, at a status conference, Auto Maxx tendered the first installment payment of $100,000.

**1.  First Modification to the Settlement Agreement**

The parties thereafter modified the Settlement Agreement at a settlement conference on December 10, 2008 ("December 10 Modification"). The December 10 Modification was entered following a settlement conference with Judge Snyder and was placed on the record. The parties agreed to a modification of Section 2.c of the Settlement Agreement regarding the dates of payment of the $425,000.00 balance. The parties agreed that the remaining $425,000 would be paid by paying $200,000

before December 22, 2008 and $225,000 before January 5, 2009.

**2. Second Modification to the Settlement Agreement**

At another status conference on May 27, 2009, the parties attempted to modify the Settlement Agreement. They further changed the remaining balance due dates, among other things. This second modification, however, was not placed on the record and was not otherwise memorialized in writing. The parties agree that the Second Modification is not enforceable under Cal.Code Civ.Proc. §664.6. (Doc. 163, Plaintiff's P&A p.9.) The parties do not argue that the terms of Second Modification should be enforced in this motion. (Doc.170, Plaintiff's Opposition p. 11; Doc. 167, Defendants' P&A p.3.)

**3. Payments after the Initial $100,000**

Nonetheless, Auto Maxx made two further payments. One payment was on May 29, 2009 in the amount of $15,000 and another payment was on July 2, 2009 in the amount of $35,000. The total payments made by Auto Maxx and/or Aboumaali was $150,000. Auto Maxx and Aboumaali agree that they have not made the required payments under the Settlement Agreement and are in default.

The dispute in the enforcement of the Settlement Agreement centers on FAST's rights: may it keep the $150,000 and proceed to trial or is FAST required to return the money paid. The parties' positions focus on the December 10 Modification to Section 2 which was placed on the record.

**C. Section 2 of the Settlement Agreement**

The relevant portions of the unmodified Settlement Agreement states:

<u>Section 2.</u>   Payment. Auto Maxx and Aboumaali shall pay FAST the sum of five hundred twenty-five thousand dollars ($525,00.00) on the dates, time, and terms as follows:

(a)   No later than (14) days after the execution of this settlement Agreement, and in any event on for before 4:30 p.m., October 8, 2008, Auto Maxx and/or Aboumaali shall pay to FAST the sum of one hundred thousand dollars ($100,000.00) to be paid at the law offices of Georgeson and Belardinelli located at 1111 East Herndon Avenue, Suite 217, Fresno, California, 93720.

(b)   In addition to and at the time of the payment of the one hundred thousand dollars ($100,000.00) by Auto Maxx and/or Aboumaali described in Section 2(a) above, and as a further condition to this settlement, Auto Maxx and/or Aboumaali and all other owners of record shall execute a second deed of trust in favor of FAST on property commonly known as 4890 Copper Avenue, Fresno, California, as more particularly described in Exhibit 1 attached hereto consisting of ten (1)) acres of undeveloped property. Said second deed of trust shall be in the amount of four hundred twenty five thousand dollars ($425,000.00) to secure payment of the balance due on this settlement subject only to the existing first deed of trust and to remain on said property until

3

payment in full is made, or as otherwise provided herein.

    **( c)    Aboumaali and/or Auto Maxx shall pay to FAST the balance due on the settlement in the sum of four hundred twenty five thousand dollars ($425,000.00) no later than seventy-five (75) days after the payment of one hundred thousand dollars ($100,000.00) is made pursuant to Section 2(a) above, and in any event, no later than 4:30 p.m., December 22, 2008 at the law offices of Georgeson and Belardinelli located at1111 East Herndon Avenue, Suite 217, Fresno, California, 93720.**

    (I)    If, after three days' written notice of default, the sum of one hundred thousand dollars and no cents ($100,000.00) is not paid by Aboumaali and/or Auto Maxx or the second deed of trust on ten (1)) acres in favor of FAST is not executed by Auto maxx and/or Aboumaali and all owners of record as provided in Sections 2(a) and 2(b) above, or before 4:30 p.m., October 8, 2008, the settlement agreement reached between the parties shall be null and void and of no effect whatsoever on the rights of any party thereto. Immediately upon the failure of Aboumaali and/or Auto Maxx to made the one hundred thousand dollar ($100,00.00) payment and/or the failure to execute the second deed of trust in the manner described in section 2(a) and 2(b) above, [this action] shall proceed to trial as if no settlement agreement existed.

    (ii)    If the sum of one hundred thousand dollars and no cents ($100,000.00) is paid by Aboumaali and/or Auto Maxx as providing in Section 2(a) above and the second deed of trust is executed by all owners of record on the ten (10) acres described in Section 2(b) above; but the balance due on the settlement of four hundred twenty five thousand dollars ($425,000.00) is not paid by Aboumaali and/or Auto Maxx, FAST, as it sole option, may exercise either of the following rights under this agreement by giving three (3) day's [sic] written notice to Auto Maxx, Aboumaali and Defendants through their attorneys within ten (10) days of their default.

    (A) Return to Auto Maxx and Aboumaali the sum of one hundred thousand dollars ($100,000.00) paid by said parties pursuant to Section 2(a) above, reconvey the second deed of trust on the ten (10) acres executed in favor of FAST pursuant to the provisions of Section 2(b), and proceed with this action as if no settlement had been reached. If this is the election made by FAST, any Party to this agreement may immediately apply to the Federal Court to obtain an operative "Scheduling Conference Order," of all operative matters as hereinafter described; or

    (B) Affirm and ratify the settlement herein, retain the one hundred thousand dollar ($100,000.00) payment made by Auto Maxx and/or Aboumaali pursuant to Section 2(a) above, and pursue any and all rights, remedies and actions possessed by FAST under the second deed of trust on the property located on Cooper Avenue executed pursuant to Section 1(b) above. If this is the election made by FAST, FAST shall dismiss the pending federal court action with prejudice as to all defendants within ten (1) days of making that election.

(Doc. 164, Settlement Agreement, Exh. 1 to Belardinelli Decl.) Thus, the $525,000 settlement amount was to be paid in two installments - $100,000 then $425,000. The $425,000 was to be secured by a

second deed of trust on real property.  In the event the $425,000 payment was not made, the Settlement Agreement provided FAST with two options: (A) return the $100,000 and proceed with the litigation, or (B) keep the money and enforce the deed of trust.

**D.     Transcript of the December 10 Modification of the Agreement**

When the parties entered into the December 10 Modification of the Settlement Agreement, the terms of the modification was placed upon the record.  The Transcript of the modification is as follows:

| | | |
|---|---|---|
| Mr. Belardinelli: | | As I understand it, and if I made a mistake, somebody better correct me. It's my understanding that the current settlement agreement will remain in full force and effect except it would be modified in the following particulars: |
| | | That a payment will be made by Auto Maxx and/or Mr. Aboumali in the sum of $200,000 on or before December 22nd by 4:30 p.m. to the law offices of Georgeson and Belardinelli.  It can be made payable to Families and Schools together Credit Union.  My name does not have to be on the check. |
| | | And that will defer the balance due of 225,000 - - is that correct  - - |
| Mr. Belardinelli: | | - - to January 5th, 2009, payable at my office on the same  - - in the same manner, made payable to Families and Schools Together without my signature on it by 4:30. |
| The Court: | | Okay. |
| Mr. Belardinelli: | | Is that correct? |
| Mr. Paloutzian: | | If I could just clarify, basically what we're doing, You Honor is we're modifying paragraph - - it's Section 2, subsection c of the agreement and the payment date of December 22nd will be reflected as set forth by Mr. Belardinelli. |
| | | So the payment date would be set forth on page 4 of the settlement agreement for the sum of $425,000 would be the sum of $200,000 should be paid not later than 4:30 p.m. on December 22nd, and whatever remaining amounts are due will be paid no - - - which are $225,000, will be paid no later than January 5, 2009 at 4:30 p.m. to the office of Georgeson and Belardinelli. |
| | | All other terms of the settlement agreement will remain the same.  And I've handed Mr. Belardinelli the signature pages of the remaining individuals, defendants have all signed the agreement. |
| The Court: | | Okay.<br>. . . |
| The Court: | | He put it on the record correctly, Mr. Belardinelli.  I was about to do it. |

5

> It's the bottom of page 3, top of page 4 of the settlement agreement, section 2 sub ( c) he put that all on the record, and it amends only that one line, do you see there? Aboumaali and /or Auto Maxx shall pay to FAST the balance due on the settlement in the sum of - - are you with me?
>
> Mr. Belardinelli:   Yes, I am.
>
> The Court:   And no later than - - flip over to page 4, pursuant to Section 2(a) above, and in - - well, you can recraft that language. You're going to have to put together different document anyway it seems to me, and you're going to have to fix that - - to wit: no later than 4:30 p.m. on December the 22nd, 2008, a payment of $200,000, and further, on or before January the 5th, 2009 the remainder due and owing of $225,000. Word it how you wish.

(Doc. 167, Dec. 10, 2008, Settlement Conference Transcript p. 6-9.)

## ANALYSIS AND DISCUSSION

**A.   Authority to Enforce Agreement Based on Jurisdiction Retained**

This Court has authority to enforce the settlement agreement: "Courts have inherent power to enforce settlements between the parties in pending cases." *See In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir.1994). However, a court has no power to enforce a settlement after a case has been dismissed, unless it has retained jurisdiction to do so. *Hagestad v. Tragesser,* 49 F.3d 1430, 1432 (9th Cir. 1995). Parties who wish to retain the court's jurisdiction to enforce their settlement agreement may do so either by having the court expressly "retain jurisdiction" or by incorporating the terms of the settlement agreement in the order of dismissal. *Kokkonene v. Guardian Life Ins. Co. of America*, 511 U.S. 275, 381 (1994).

Here, the parties agree that this Court retained jurisdiction to enforce the settlement agreement and modification. In particular, at the December 10, 2008 Settlement Conference, the parties agreed on the record that (1) the Court retained jurisdiction to enforce the Settlement (Doc. 167, Transcript p.10:5-8); and (2) the Court could enforce the settlement under California Code Civ.Pro §664.6 (Doc. 167, Transcript p.10:5-8).

Pursuant to Cal.Code Civ. Proc. §664.6, this Court has authority to enter judgment on the terms of the Settlement Agreement. Code.Civ.Proc §664.6 ("the court, upon motion, may enter judgment pursuant to the terms of the settlement.") The court is empowered "to enter judgment" where parties to pending litigation stipulate to a settlement either orally before the court; or in a writing signed by the parties outside court. Pursuant to Section 664.6, the Court may determine

disputed factual issues and permits the court "to entertain challenges to the actual terms of the stipulation, that is, whether there actually was a settlement ... and to interpret the terms and conditions to settlement agreement." *Fiore v. Alvord,* 182 Cal.App.3d 561, 566, 221 Cal.Rptr. 400, (1985). Accordingly, the Court has jurisdiction to enter judgment on the terms of the Settlement Agreement.

**B.     The Parties' Positions on Enforcing the Settlement Agreement**

**1.     Plaintiff's position**

Plaintiff contends that when the parties entered into the December 10 Modification of the Settlement Agreement, the parties specifically modified Section 2, subparagraph ( c) "in its entirety." Plaintiff argues that the parties agreed that since the written settlement agreement had not been complied with by defendants, the modification would amend the entirety of Section 2. (Doc. 170, Plaintiff's Opposition p. 4:21-28.) Plaintiff argues that it "understood that the entirety of Section 2 including subparagraph 2( c) was being amended to provide for the conclusion of the settlement and in the event Auto Maxx did not comply, FAST could seek a judgment on the remaining balance due under the settlement agreement as amended." (Doc. 170, Plaintiff's Opposition p. 5:1-5; Doc. 175, Reply p.3-4.) Implicit in plaintiff's argument is that the remaining portions of the Section 2, subparagraph ( c) were deleted by the December 10 Modification. Plaintiff argues that any requirement to return to defendants the money paid on the settlement was eliminated by the amendment of Section 2.c. (Doc. 175, Plaintiff's Reply p.4:16-18.) Plaintiff argues that any other interpretation of the settlement would make the agreement illusory, lacking any consideration by defendants, because defendans would have no obligation to fulfil their promises by making payment. (Doc. 175, Plaintiff's Reply p.4:24-26.) Plaintiff cites *Scottsdale Ins. Co. v. Essex Ins. Co.*, 98 Cal.App.4th 86, 94 -95 (2002) for the proposition that for a contract to be valid, the parties must exchange promises that represent legal obligations.

**2.     Defendants' position**

Defendants Auto Maxx and Aboumaali argue that FAST has two options in the event of a default: (1) FAST can either go to trial and return the payments or (2) FAST can keep the money and pursue its rights under the deed of trust. Defendants contend that these are the only alternatives

under the Settlement Agreement.

Defendant argues that if plaintiff desires to continue to trial, then the plain language of the Settlement Agreement requires FAST to return the $150,000 paid to date and to proceed "as if no settlement had been reached." If no settlement had been reached, then FAST is not entitled to keep the $150,000 paid as partial settlement.

Defendants further argue that the parties entered into a settlement with very specific terms that contemplated the inability of Defendants to comply with the payment obligations and which limited the options of Plaintiff under such circumstances. (Doc. 174, Defendant's Reply p. 1.) Defendants ask that the Court require FAST to return the payments made and proceed to trial or retain the monies and foreclose upon the deed of trust.

## C.     Interpretation of the Settlement Agreement

### 1.     Standards for Contract Interpretation

The court's initial focus in resolving a question of the language of the contract, is the contract itself. Contract interpretation is solely a judicial function when "based on the words of the instrument alone, when there is no conflict in the extrinsic evidence, or a determination was made based on incompetent evidence." *See City of Hope Nat. Medical Center v. Genentech, Inc.,* 43 Cal.4th 375, 395, 75 Cal.Rptr.3d 333 (2008). Absent evidence indicating the parties intended a special usage, words used in a contract should be interpreted in their "ordinary and popular sense." Cal.Civ.Code § 1644. In determining whether a provision has a "plain meaning," it must be read in the context of the entire contract: "The whole of a contract is to be taken together, so as to give effect to every part ... each clause helping to interpret the other." Cal.Civ.Code § 1641. Terms are to be interpreted "in their 'ordinary and popular sense,' unless used by the parties in a technical sense or a special meaning is given to them by usage.'" *MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th 635, 647-648 (2003).

Here, the parties do not contend that any term of the Settlement Agreement is ambiguous. When terms are unambiguous, California law requires that the mutual intention of the parties is to be "inferred, if possible, solely from the written provisions of the contract." *MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th at 647-648. The mutual intention of the contracting parties at the time the

contract was formed governs interpretation. Cal. Civ. Code §1636. "The parties' mutual intent is to be determined, if semantically possible, *solely* from the written provisions of the contract." *AIU Ins. Co. v. Sup.Ct., FMC Corp.*, 51 Cal.3d 807, 822, 274 Cal.Rptr. 820 (1990). Therefore, the Court turns to the language used in the Settlement Agreement.

**2.     Interpretation of Section 2 of the Settlement Agreement and the December 10 Modification**

Section 2 of the Settlement Agreement provides that defendants shall pay FAST $525,000, in two installments. One installment of $100,000 was due on October 8, 2008. (Doc. 164, Settlement Agreement, Section 2.a.) The other installment of $425,000 was due on December 22, 2008. (Doc. 164, Settlement Agreement, Section 2.c.) To secure payment of the $425,000, defendant Aboumaali was required to give a second deed of trust. (Doc. 164, Settlement Agreement, Section 2.b; Doc. 164, Belardinelli Decl. ¶8.) Aboumaali gave the deed of trust, but it was not a second deed of trust.[1] (Doc. 164, Belardinelli Decl. ¶8.) FAST did not record a deed of trust given by Mr. Aboumaali. (Doc. 167.2 p. 3:9-10.) The $425,000 was not paid as required by the Settlement Agreement.

Since the $100,000 was paid, but the $425,000 was not, Section 2.c.ii of the Settlement Agreement was triggered. Section 2.c.ii provides:

> (ii)     If the sum of one hundred thousand dollars and no cents ($100,000.00) is paid by Aboumaali and/or Auto Maxx as providing in Section 2(a) above and the second deed of trust is executed by all owners of record on the ten (10) acres described in Section 2(b) above; **but the balance due on the settlement of four hundred twenty five thousand dollars ($425,000.00) is not paid** by Aboumaali and/or Auto Maxx, FAST, **as it sole option, may exercise either of the following rights** under this agreement by giving three (3) day's [sic] written notice to Auto Maxx, Aboumaali and Defendants through their attorneys within ten (10) days of their default. (Emphasis added)

Section 2.c.ii limits FAST's options in the event the $425,000 is not paid. The "options" are contained in Section 2.c.ii.(A) and in Section 2.c.ii (B) as follows:

---

[1] The Settlement Agreement provides that Aboumaali was to give a second deed of trust on specific real property. According to plaintiff's moving papers, he gave the deed of trust, but it was a third deed of trust. Thus, it appears that there is a breach of the Settlement Agreement. The parties, however, did not address the deed of trust issue and did not raise it to the Court for decision.

9

      (A) **Return** to Auto Maxx and Aboumaali the sum of one hundred thousand dollars ($100,000.00) paid by said parties pursuant to Section 2(a) above, reconvey the second deed of trust on the ten (10) acres executed in favor of FAST pursuant to the provisions of Section 2(b), and proceed with this action as if no settlement had been reached.  If this is the election made by FAST, any Party to this agreement may immediately apply to the Federal Court to obtain an operative "Scheduling Conference Order," of all operative matters as hereinafter described; **or**

      (B) **Affirm and ratify the settlement** herein, retain the one hundred thousand dollar ($100,000.00) payment made by Auto Maxx and/or Aboumaali pursuant to Section 2(a) above, and pursue any and all rights, remedies and actions possessed by FAST under the second deed of trust on the property located on Cooper Avenue executed pursuant to Section 1(b) above.  If this is the election made by FAST, FAST shall dismiss the pending federal court action with prejudice as to all defendants within ten (1) days of making that election. (Emphasis added.)

Pursuant to Section 2.c.ii (A) and (B), the parties agreed that in the event of a default on the $425,000, FAST may either return the unrecorded deed and pursue its rights "as if no settlement had been reached," or record the deed and pursue its rights under the Deed of Trust and Settlement Agreement.

      The December 10 Modification modified only a small portion of the Settlement Agreement. According to the transcript, the on-the-record modification modified only one line in Section 2.c:

Mr. Paloutzian:    If I could just clarify, basically what we're doing, You Honor is we're modifying paragraph - - it's Section 2, subsection c of the agreement and the payment date of December 22nd will be reflected as set forth by Mr. Belardinelli.

    So the payment date would be set forth on page 4 of the settlement agreement for the sum of $425,000 would be the sum of $200,000 should be paid not later than 4:30 p.m. on December 22nd, and whatever remaining amounts are due will be paid no - - - which are $225,000, will be paid no later than January 5, 2009 at 4:30 p.m. to the office of Georgeson and Belardinelli.

    All other terms of the settlement agreement will remain the same.  And I've handed Mr. Belardinelli the signature pages of the remaining individuals, defendants have all signed the agreement.

The Court:    Okay.
    . . .

The Court:    He put it on the record correctly, Mr. Belardinelli.  I was about to do it. **It's the bottom of page 3, top of page 4 of the settlement agreement, section 2 sub ( c) he put that all on the record, and it amends only that one line**, do you see there?  Aboumaali and /or Auto Maxx shall pay to FAST the balance due on the settlement in the

sum of - - are you with me?

  Mr. Belardinelli:  Yes, I am. (Emphasis added)

The transcript of the Settlement Conference shows that the only terms which were modified were the timing of payments and amounts of the remaining payments. Thus, the "options" in the event of default were not changed. The December 10 Modification modified Section 2.c, in substance, as follows:

> *old:* "Aboumaali and/or Auto Maxx shall pay to FAST the balance due on the settlement in the sum of **four hundred twenty five thousand dollars ($425,000.00)** no later than seventy-five (75) days after the payment of one hundred thousand dollars ($100,000.00) is made pursuant to Section 2(a) above, and in any event, no later than 4:30 p.m., **December 22, 2008**"
>
> *New:* "Aboumaali and/or Auto Maxx shall pay to FAST the balance due on the settlement in the sum of two hundred thousand dollars **($200,000.00) no later than 4:30 p.m., December 22, 2008 and ($225,000.00)** no later than January 5, 2009" (Emphasis added.)[2]

The modification was merely an agreement to give defendants additional time to pay the $425,000 balance that was due under the original settlement, and in smaller increments.

  Plaintiff argues that the entirety of Section 2.c was modified. In essence, plaintiff argues that after the December 10 Modification, all that was left in Section 2.c was the change of the payment dates. Plaintiff argues that the remainder of Section 2.c was deleted, thus deleting the "options" FAST had in the event of default.

  Nothing in the Transcript, however, states that all terms of Section 2.c were modified. Indeed, the Transcript identifies that only "one line" of the Settlement Agreement is modified:

  The Court:  He put it on the record correctly, Mr. Belardinelli. I was about to do it. It's the bottom of page 3, top of page 4 of the settlement agreement, **section 2 sub ( c) he put that all on the record, and it amends only that one line**, do you see there? Aboumaali and /or Auto Maxx shall pay to FAST the balance due on the settlement in the sum of - - are you with me?

  Mr. Belardinelli:  Yes, I am.

(Doc. 167, Transcript p. 8.) There is no language in the Transcript that indicate that entirety of the

---

[2] The Court interprets the modification from the Transcript, since the parties did not put the December 10 Modification in writing.

remainder of Section 2.c was eliminated by the modification. The modification was limited and confined to the timing and amounts of the remaining payments due.

Plaintiff argues that the December 10, 2008 modification is illusory. Plaintiff argues that any other interpretation of the settlement would make the agreement illusory, lacking any consideration by defendants, because defendants would have no obligation to fulfil their promises by making payment. Plaintiff argues to interpret the Settlement Agreement as requiring the return of the monies paid to FAST would be contrary to what was intended by the parties and contrary to good faith and fair dealing.

Here, the modification is not illusory. The modification changes the dates of payment, not the obligation whether to pay. The obligation to pay is the same as was always in the Settlement Agreement. The options to FAST upon default are the same as in the original agreement. Upon default, FAST may elect to return the money and proceed in the litigation as if no settlement had occurred, or it may ratify the settlement and pursue the terms of the Settlement Agreement. (Doc.164, Settlement Agreement Section 2.c.ii (A) and (B).) The December 10 Modification is not illusory.

It is undisputed that defendants are in default under the agreement. Thus, FAST is put to an election of whether to return the money and proceed with the litigation or whether to ratify the Settlement Agreement and thereby, allow the Court to grant the defendants' motion.

**3.      Amount of Money to be "Returned" upon that Election**

Defendants argue that should FAST elect to proceed with litigation pursuant to Section 2.c.ii (A), defendants should be refunded the amount of money they paid, $150,000.

If FAST elects to proceed with litigation, defendants are not entitled to a return of $150,000 under the Settlement Agreement. The Settlement Agreement states:

> (A) Return to Auto Maxx and Aboumaali the sum of one hundred
> thousand dollars ($**100,000.00**) paid by said parties pursuant to Section
> 2(a) above, reconvey the second deed of trust . . .

The Settlement Agreement requires the return of $100,000, not the amount actually paid. The Settlement Agreement is specific in the amount of money to be refunded. It did not require the

return of "any monies paid." Any amounts paid in excess of the $100,000 was paid at the risk of FAST's election.[3]

## CONCLUSION

For the foregoing reasons, the Court DENIES Families and Schools Together Federal Credit Union's Motion to Enforce the Settlement Agreement.

FAST is ordered to file its election within ten (10) Court days from the date of service of this order. Once the election is filed, the Court will supplement and complete this Order appropriately.

IT IS SO ORDERED.

**Dated:    January 5, 2010**                              **/s/ Lawrence J. O'Neill**
                                                        UNITED STATES DISTRICT JUDGE

---

[3] The Court leaves to another day, if properly brought before the Court for decision, the issue of the excess $50,000 as a credit against any potential judgment.